Laurence M. Rosen, Esq. (SBN 219683)
THE ROSEN LAW FIRM, P.A.
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERGIO GROBLER, Individually and on Behalf of All Others Similarly Situated, | Case No.: |
| Plaintiff, | |
| vs. | **CLASS ACTION COMPLAINT** |
| ANAPLAN INC., FRANK CALDERONI, and DAVID H. MORTON, | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

Plaintiff Sergio Grobler ("Plaintiff"), alleges upon personal knowledge as to allegations specifically pertaining to Plaintiff and, as to all other matters, upon the investigation of counsel, which included, without limitation: (a) review and analysis of public filings made by Anaplan, Inc. ("Anaplan" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants and other related non-parties; (c) review of news articles, shareholder communications, conference calls and postings on Anaplan's website concerning the Company's public statements; and (d) review of other publicly available information concerning Anaplan and the Individual Defendants (as defined below).

## <u>NATURE OF THE ACTION</u>

1.      This is a federal securities class action against Anaplan and certain of its officers for violations of the federal securities laws.  Plaintiff brings this action on behalf of all persons or entities that purchased or otherwise acquired Anaplan common stock from November 21, 2019 through February 26, 2020, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").  The Exchange Act claims allege that certain defendants engaged in a fraudulent scheme to artificially inflate the Company's stock price.

2.      Anaplan develops and publishes a cloud platform for business applications which it delivers as a subscription service.  One of the most important financial metrics for investors in analyzing Anaplan's performance is "calculated billings" — defined as revenue plus the sequential change in total deferred revenue as presented on the balance sheet.  Calculated billings is used by investors to evaluate subscription businesses, such as Anaplan, that do not directly disclose billings as part of their financial reporting.  Calculated billings are a vitally important metric to Anaplan investors because it is widely seen as a predictor of future revenue growth.  If

calculated billings grow faster than revenue in a given period, it suggests that future revenue growth would eventually increase to reach the billings growth number. Conversely, if calculated billings are growing slower than revenue, it suggests that future revenue growth will decrease.

3. Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors that: (1) the Company was undergoing sales organization and execution challenges; (2) these organizational challenges were causing the Company to miss on closing very important large deals; and (3) as a result, Anaplan's financial guidance for "calculated billings growth" was baseless and unattainable. Further, while in possession of this material non-public information, Anaplan insiders dumped approximately $30 million worth of Anaplan stock at artificially inflated prices.

4. When the truth about the Company's operations and performance was belatedly disclosed to investors, Anaplan's share price plummeted 25% in one day, wiping out $1.9 billion in market capitalization. As a result of Defendants' wrongful acts and omissions and the precipitous decline in the market value of the Company's common stock, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

5. The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

6. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, Section 27 of the Exchange Act (15 U.S.C. § 78aa).

7. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b), Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged

fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District, as Anaplan is headquartered in this district.

8.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## CLASS ACTION ALLEGATIONS

9.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Anaplan common stock between November 21, 2019 and February 26, 2020, inclusive, and who were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

10.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Anaplan's common shares actively traded on the NYSE.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Millions of shares of Anaplan common stock were traded publicly during the Class Period on the NYSE.  Record owners and other members of the Class may be identified from records maintained by Anaplan or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

11.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

12.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

13.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

a)      whether the federal securities laws were violated by Defendants' acts and omissions as alleged herein;

b)      whether Defendants participated in and pursued the common course of conduct complained of herein;

c)      whether documents, press releases, and other statements disseminated to the investing public and the Company's shareholders during the Class Period misrepresented material facts about the business, finances, and prospects of Anaplan;

d)      whether statements made by Defendants to the investing public during the Class Period misrepresented and/or omitted to disclose material facts about the business, finances, value, performance and prospects of Anaplan;

e)      whether the market price of Anaplan common stock during the Class Period was artificially inflated due to the material misrepresentations and failures to correct the material misrepresentations complained of herein; and

f)      the extent to which the members of the Class have sustained damages and the proper measure of damages.

14.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually

redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

**PARTIES**

15.     Plaintiff Sergio Grobler, as set forth in the accompanying certification, incorporated by reference herein, purchased Anaplan common stock during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

16.     Defendant Anaplan is incorporated under the laws of Delaware with its principal executive offices located in San Francisco, California. Anaplan's common stock trades on the NYSE exchange under the symbol "PLAN."

17.     Defendant Frank Calderoni ("Calderoni") was the Chief Executive Officer ("CEO") and Chairman of the Company at all relevant times.

18.     Defendant David H. Morton ("Morton") was the Chief Financial Officer ("CFO") of the Company at all relevant times.

19.     Defendants Calderoni and Morton (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market.   The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially

false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein.

20.    The Company and the Individual Defendants are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

21.    Anaplan is a software company that provides a cloud-based connected planning platform to connect organizations and people.  One of the most important financial metrics for investors in analyzing Anaplan's performance is "calculated billings." The Company defines calculated billings as revenue plus the sequential change in total deferred revenue as presented on the balance sheet. Calculated billings are used by investors to evaluate subscription businesses, such as Anaplan, that do not directly disclose billings as a part of their financial reporting.

22.    Calculated billings are an important metric to Anaplan and its investors as it is widely seen as a predictor of future revenue growth. If calculated billings grow faster than revenue in a given period, it suggests that future revenue growth would eventually increase to reach billings growth number. Conversely, if calculated billings are growing slower than revenue, it suggests that future revenue growth will decrease.

23.    Over the past few years, Anaplan has shown astronomical increases in its quarterly percentage growth rate in calculated billings, which in turn fueled the stock's spectacular performance. Throughout the Class Period, the Company repeatedly stressed the importance of the billings growth rate by including it in its filings and earnings call presentations. Since becoming public, and prior to Anaplan's fiscal fourth quarter of 2020, the Company had never reported a quarterly growth rate in calculated billings of under 40%. In fact, Anaplan reported its

highest ever growth rate of 59% in the fiscal third quarter of 2020, which was much faster than its revenue growth rate of 44% for the same quarter.



24.    Analysts and investors were hyper-focused on this one metric.  In fact, on November 20, 2019, a day before the Company was scheduled to announce its fiscal 2020 third quarter earnings, Bloomberg issued an article titled "Preview Anaplan 3Q: Billings Growth Key Factor After 2019 Rally."  The article stated that while analysts are generally optimistic about the company's long-term prospects, "there is skepticism that billings will be strong enough to extend a strong 2019 rally."

**Materially False and Misleading**
**Statements Issued During the Class Period**

25.    The Class Period begins on November 21, 2019, when Anaplan announced its fiscal third quarter results that handily beat analyst estimates and the Company actually raised its revenue guidance.  For the fiscal fourth quarter specifically, Anaplan estimated total revenue to be up to $97.5mm (which would be a growth rate of over 40% when compared to revenue of $69.5mm in the same quarter a year ago).  Regarding "calculated billings," Anaplan squashed

any concerns over a slowing of this widely followed metric, announcing that it had booked $114.4 million, which was 59% higher versus the same period a year ago (and much higher than its quarterly revenue growth rate).

26.     In addition, CFO Morton made a series of extremely positive statements, stating that: "For the full fiscal 2020, we are raising our revenue and operating margin outlook, driven by the third quarter performance and the ongoing strength we see in our business."  Moreover, while Morton acknowledged that billings could fluctuate from quarter to quarter, he explicitly stated, "[W]e believe billings to track in line with overall revenue growth rates."  Since the Company was estimating revenue growth of at least 40% in the fiscal fourth quarter, investors were led to believe that calculated billings would also be at least 40%.  In addition, during the conference call, CEO Calderoni was asked about the macro environment and any issues with closing deals, and he responded that "we are not seeing any changes in the macro environment over within deal cycles anything like that."  On this extremely positive news and bright outlook, Anaplan's stock price jumped $3.94 per share or over 8% from $49.15 per share to $53.09 per share.

27.     Analysts immediately seized upon the positive "billings" numbers.  SunTrust Robinson Humphrey issued a report on the same day titled "Huge Billings Beat, Strong RPO in 3Q; Honeycomb Oozing With Honey."  The report stated: "We note that this is a sizable beat and the highest y/y growth in billings the company has achieved since its IPO"…"We have raised our billings estimates across the board"…"The billings upside seen throughout the year and the 59% y/y billings growth in 3Q and RPO strength bode well for growth upside in FY 21, given the correlation between billings and the following year subscription revenue."

28.     Similarly, RBC Capital Markets issued a report titled: "3Q Recap: Got those Billings in My Pocket," also highlighting the importance of the "billings" metrics to investors.

The report stated: "Any way we try to slice this number [calculated billings growth] implies that subscription revenue growth could accelerate from current levels as management has noted that over time calculated billings growth and subscription revenue growth should converge."  The report additionally stated that "We view preliminary guidance as highly conservative in light of the fact that YTD Calculated Billings and RPO are both growing in the mid-50% range."

29.     The above statements identified in ¶¶25-26 were materially false and/or misleading and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors that: (1) the Company was undergoing sales organization and execution challenges; (2) these organizational challenges were causing the Company to miss on closing very important large deals; and (3) as a result, Anaplan's financial guidance for "calculated billings growth" was baseless and unattainable. Further, while in possession of this material non-public information, Anaplan insiders dumped approximately $30 million worth of Anaplan stock at artificially inflated prices.

**Suspicious Insider Trading by Individual**
**Defendants During the Class Period**

30.     No sooner had defendants made these positive statements than they began selling material amounts of their stock.  Between November 21, 2019 and February 26, 2020, Calderoni and Morton sold a combined $30 million worth of stock.  In fact, Calderoni sold on November 21, 2020, the very day the Company announced fiscal third quarter results whereby the Company increased its revenue guidance.

31.     Notably, Calderoni sold 108,249 Anaplan shares in mid-January (the fiscal quarter ended 1/31/20), and another 187,175 shares were sold in February, after the quarter ended (including shares sold on February 20, 2020, only six days prior to the earnings release).  The sales in February were much larger than his historical trading pattern and occurred at a time when the CEO obviously knew the quarter had come in much worse than predicted.

1
2
3
4
5
6
7
8
9
10



11  **The Truth Is Revealed**

12  32.   On February 27, 2020, the Company announced that, although it slightly exceeded

13  revenue guidance for the quarter ($98.2mm versus $97.5mm estimate), which grew at rate of

14  42% year-over-year, its calculated billings for the fourth quarter fell far short of expectations.

15  Specifically, billings were only $126 million, representing a growth rate of 25%, which was well

16  below consensus estimates of $138 million, and roughly half of the Company's historical growth

17  rates of 46% to 59%, and far less than the Company's rate of revenue growth of over 40%.

18  33.   In response to this shocking disclosure, that was in stark contrast to the

19  management's previous statement that the calculated billings growth rate would track the

20  revenue growth rate, Anaplan's stock price plummeted 25% in a single day, falling from $58.09

21  to $44.03, wiping out almost $2 billion in market cap.  Highly reputable financial news source

22  Barron's attributed the stock price decline to the slowing billings growth with an article titled

23  "Anaplan stock plunges on concerns about slowing billings growth."

24  34.   The Company blamed the shortfall on "management changes," which resulted in

25  the inability to close some large deals at the end of the quarter, and also announced that its Chief

26  Growth Officer was leaving after only a few months on the job.  Analysts immediately pointed

27
28

out that the billings growth rate had fallen to half its historical rate, and that the "significant drop" in billings was a strong sign of a business in trouble.  As RBC said, "the company did not provide clarity around the number of slipped deals, size of the total opportunity, nor timing of the potential recovery. While affirming that these deals were not lost, the lack of commentary that would suggest some have closed, or are expected to close near term, is concerning."

## UNDISCLOSED ADVERSE FACTS

35.    The market for Anaplan's common stock was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Anaplan's common stock traded at artificially inflated prices during the Class Period.   Plaintiff and other members of the Class purchased or otherwise acquired Anaplan's common stock relying upon the integrity of the market price of the Company's common stock and market information relating to Anaplan and have been damaged thereby.

36.    During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Anaplan's common stock, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Anaplan's business, operations, and prospects as alleged herein.

37.    At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Anaplan's financial well-being and prospects.

38.     These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's common stock to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and misleading statements made during the Class Period resulted in Plaintiff and the other members of the Class purchasing the Company's common stock at artificially inflated prices, thus causing the damages complained of herein.

## LOSS CAUSATION

39.     During the Class Period, as detailed herein, the Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the prices of Anaplan common stock and operated as a fraud or deceit on Class Period purchasers of Anaplan common stock by failing to disclose to investors that the Company's financial results were materially misleading and misrepresented material information.  When the Defendants' misrepresentations and fraudulent conduct were disclosed and became apparent to the market, the prices of Anaplan common stock fell precipitously as the prior inflation came out of the Company's stock price. As a result of their purchases of Anaplan common stock during the Class Period, Plaintiff and the other Class members suffered economic loss.

40.     By failing to disclose the true state of the Company's financial statements, investors were not aware of the true state of the Company's financial status.  Therefore, the Defendants presented a misleading picture of Anaplan's business practices and procedures.  Thus, instead of truthfully disclosing during the Class Period the true state of the Company's business, the Defendants caused Anaplan to conceal the truth.

41.     The Defendants' false and misleading statements had the intended effect and caused Anaplan's common stock to trade at artificially inflated levels throughout the Class Period.

The stock price drop discussed herein caused real economic loss to investors who purchased the Company's common stock during the Class Period.

42.     The decline in the price of Anaplan's common stock after the truth came to light was a direct result of the nature and extent of the Defendants' fraud finally being revealed to investors and the market.  The timing and magnitude of Anaplan's common stock price decline negates any inference that the loss suffered by Plaintiff and the other Class members was caused by changed market conditions, macroeconomic or industry factors, or Company-specific facts unrelated to the Defendants' fraudulent conduct.  The economic loss suffered by Plaintiff and the other Class members was a direct result of the Defendants' fraudulent scheme to artificially inflate the prices of Anaplan's common stock and the subsequent decline in the value of Anaplan's common stock when the Defendants' prior misrepresentations and other fraudulent conduct were revealed.

## SCIENTER ALLEGATIONS

43.     As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.

44.     As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Anaplan, their control over, and/or receipt and/or modification of Anaplan's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Anaplan, participated in the fraudulent scheme alleged herein.

**APPLICABILITY OF PRESUMPTION OF RELIANCE:**
**FRAUD-ON-THE-MARKET DOCTRINE**

45.     At all relevant times, the market for Anaplan's common stock was an efficient market for the following reasons, among others:

        a.      Anaplan shares met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

        b.      As a regulated issuer, Anaplan filed periodic public reports with the SEC and/or the NYSE;

        c.      Anaplan regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

        d.      Anaplan was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

46.     As a result of the foregoing, the market for Anaplan's common stock promptly digested current information regarding Anaplan from all publicly available sources and reflected such information in Anaplan's share price.   Under these circumstances, all purchasers of Anaplan's common stock during the Class Period suffered similar injury through their purchase of Anaplan's common stock at artificially inflated prices and a presumption of reliance applies.

47.   A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

### NO SAFE HARBOR

48.   The federal statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint.  The statements alleged to be false and misleading herein all relate to then-existing facts and conditions.  In addition, to the extent certain of the statements alleged to be false may be characterized as forward-looking, they were not identified as "forward-looking statements" when made, and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

49.   In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or

misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Anaplan who knew that the statement was false when made.

## COUNT I

### Violation of Section 10(b) of The Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants

50.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.  This claim is asserted against all Defendants.

51.     During the Class Period, Anaplan and the Individual Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and the other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Anaplan common stock; and (iii) cause Plaintiff and the other members of the Class to purchase Anaplan common stock at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

52.     These Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for Anaplan common stock in violation of §10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.  The Defendants are sued as primary participants in the wrongful and illegal conduct charged herein.  The Individual Defendants are also sued herein as controlling persons of Anaplan, as alleged herein.

53.     Anaplan and the Individual Defendants, individually and in concert, directly and indirectly, by the use of means or instrumentalities of interstate commerce and/or of the mails,

engaged and participated in a continuous course of conduct to conceal adverse material information about the business, business practices, performance, operations and future prospects of Anaplan as specified herein.  These Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Anaplan's value and performance and substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts, and omitting to state material facts necessary in order to make the statements made about Anaplan and its business, operations and future prospects, in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of Anaplan's common stock during the Class Period.

54.    Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) each of the Individual Defendants was a high-level executive and/or director at the Company during the Class Period; (ii) each of the Individual Defendants, by virtue of his responsibilities and activities as a senior executive officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's operational and financial projections and/or reports; (iii) the Individual Defendants enjoyed significant personal contact and familiarity with each other, and were advised of and had access to other members of the Company's management team, internal reports, and other data and information about the Company's financial condition and performance at all relevant times; and (iv) the Individual Defendants were aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

55.     These Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were readily available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly, and for the purpose and effect of concealing Anaplan's operating condition, business practices and future business prospects from the investing public and supporting the artificially inflated price of its common stock.  As demonstrated by their overstatements and misstatements of the Company's financial condition and performance throughout the Class Period, the Individual Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were severely reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

56.     As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Anaplan common stock was artificially inflated during the Class Period.  In ignorance of the fact that the market price of Anaplan shares was artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, upon the integrity of the market in which the securities trade, and/or on the absence of material adverse information that was known to or recklessly disregarded by the Defendants but not disclosed in public statements by these Defendants during the Class Period, Plaintiff and the other members of the Class acquired Anaplan common stock during the Class Period at artificially inflated high prices and were damaged thereby.

57.     At the time of said misrepresentations and omissions, Plaintiff and the other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff

and the other members of the Class and the marketplace known of the true performance, business practices, future prospects and intrinsic value of Anaplan, which were not disclosed by the Defendants, Plaintiff and the other members of the Class would not have purchased or otherwise acquired Anaplan common stock during the Class Period, or, if they had acquired such common stock during the Class Period, they would not have done so at the artificially inflated prices which they paid.

58.    By virtue of the foregoing, Anaplan and the Individual Defendants each violated §10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

59.    As a direct and proximate result of the Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

### **COUNT II**

**Violation of Section 20(a) of The Exchange Act**
**Against the Individual Defendants**

60.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

61.    The Individual Defendants were and acted as controlling persons of Anaplan within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions with the Company, participation in and/or awareness of the Company's operations and/or intimate knowledge of the Company's actual performance, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.  Each of the Individual Defendants was provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or

shortly after these statements were issued, and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

62.    In addition, each of the Individual Defendants had direct involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

63.    As set forth above, Anaplan and the Individual Defendants each violated §10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.  By virtue of their controlling positions, the Individual Defendants are liable pursuant to §20(a) of the Exchange Act.  As a direct and proximate result of these Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)    Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)    Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)    Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)    Such other and further relief as the Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: August 24, 2020

Respectfully Submitted,

**THE ROSEN LAW FIRM, P.A.**

/s/ Laurence M. Rosen
Laurence M. Rosen, Esq. (SBN 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*