Bruce G. Vanyo (SBN 60134)
bruce@katten.com
Paul S. Yong (SBN 303164)
paul.yong@katten.com
KATTEN MUCHIN ROSENMAN LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067
Telephone: (310) 788-4400
Facsimile: (310) 788-4471

Michael J. Lohnes (admitted *pro hac vice*)
michael.lohnes@katten.com
KATTEN MUCHIN ROSENMAN LLP
525 West Monroe Street
Chicago, IL 60661
Telephone: (312) 902-5200
Facsimile: (312) 902-1061

*Counsel for Defendants Anaplan Inc.,*
*Frank Calderoni, and David H. Morton*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| FADEL SAKKAL, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ANAPLAN INC., FRANK CALDERONI, and DAVID H. MORTON,<br><br>Defendants. | Case No. 20-cv-05959-RS<br><br><u>CLASS ACTION</u><br><br>**MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**<br><br>The Honorable Richard Seeborg<br><br>Date: August 26, 2021<br><br>Time: 1:30 PM<br><br>Courtroom: 3 |

**TABLE OF CONTENTS**

Page

INTRODUCTION .................................................................................................................1

I.     THE COMPLAINT DOES NOT PLEAD A FALSE STATEMENT OR
       OMISSION. ...............................................................................................................1

       A.     The Complaint Fails To Establish that Statements Concerning Anaplan's
              Billings or Overall Business Strength Were False When Made. ...........................1

       B.     The CW Allegations Do Not Establish Defendants' Statements About
              Anaplan's Growth Prospects or Its Sales Organization Were False. ......................2

              1.     The CW Allegations Are Inadequately Pled. ...............................................2

              2.     The CW Allegations Do Not Establish that Defendants' Statements
                     About Anaplan's Growth Prospects Were False. ........................................4

              3.     Anaplan Had No Duty To Disclose Supposed Internal Problems. ..............5

              4.     The CW Allegations Do Not Establish that Defendants' Statements
                     About Anaplan's Sales Organization and Leadership Were False. .............7

       C.     The PSLRA Safe Harbor Protects Morton's Statement About Billings. .................7

       D.     The Remainder of the Challenged Statements Are Non-Actionable
              Puffery. ...............................................................................................................9

II.    PLAINTIFF FAILS TO PLEAD A STRONG INFERENCE OF SCIENTER. ...............10

III.   PLAINTIFF'S SECTION 20(A) CLAIM FAILS. .........................................................14

CONCLUSION ..................................................................................................................14

**Katten**
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel    310.788.4471 fax

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Apple Inc. Sec. Litig.*,
    2020 WL 6482014 (N.D. Cal. Nov. 4, 2020) ..........................................................................14

*In re Apple Sec. Litig.*,
    2020 WL 2857397 (N.D. Cal. June 2, 2020) ............................................................................6

*Applestein v. Medivation, Inc.*,
    861 F. Supp. 2d 1030 (N.D. Cal. 2012), *aff'd*, 561 F. App'x 598 (9th Cir. 2014) ...................4

*Berg v. Velocity Fin., Inc.*,
    2021 WL 268250 (C.D. Cal. Jan. 25, 2021) .............................................................................9

*Bos. Ret. Sys. v. Uber Techs., Inc.*,
    2020 WL 4569846 (N.D. Cal. Aug. 7, 2020) ..........................................................................10

*Brodsky v. Yahoo! Inc.*,
    630 F. Supp. 2d 1104 (N.D. Cal. 2009) ........................................................................ *passim*

*City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*,
    2019 WL 6877195 (N.D. Cal. Dec. 17, 2019) ..........................................................................3

*In re Countrywide Fin. Corp. Deriv. Litig.*,
    554 F. Supp. 2d 1044 (C.D. Cal. 2008) (cited Opp'n ) ..........................................................4, 9

*Cunha v. Hansen Nat. Corp.*,
    2012 WL 12886194 (C.D. Cal. Oct. 22, 2012) .........................................................................6

*In re Cutera Sec. Litig.*,
    610 F.3d 1103 (9th Cir. 2013) ..................................................................................................9

*In re Daou Sys., Inc.*,
    411 F.3d 1006 (9th Cir. 2005) ..................................................................................................4

*In re ECOtality, Inc. Sec. Litig.*,
    2014 WL 4634280 (N.D. Cal. Sept. 16, 2014) .......................................................................8, 9

*Evanston Police Pen. Fund v. McKesson Corp.*,
    411 F. Supp. 3d 580 (N.D. Cal. 2019) (cited Opp'n ) ..............................................................11

*In re Foundry Networks, Inc. Sec. Litig.*,
    2003 WL 22077729 (N.D. Cal. Aug. 29, 2003) ........................................................................4

*In re FoxHollow Techs., Inc., Sec. Litig.*,
    2008 WL 2220600 (N.D. Cal. May 27, 2008) ...........................................................................6

**Katten**
KattenMuchinRosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

ii

*In re Fusion-io, Inc. Sec. Litig.*,
2015 WL 661869 (N.D. Cal. Feb. 12, 2015) .......................................................................2, 12

*In re Galena Biopharma, Inc. Sec. Litig.*,
117 F. Supp. 3d 1145 (D. Or. 2015) ........................................................................................13

*Gregory v. ProNAi Therap. Inc.*,
297 F. Supp. 3d 372 (S.D.N.Y. 2018), *aff'd*, 757 F. App'x 35 (2d Cir. 2018).........................12

*Kane v. Madge Networks N.V.*,
2000 WL 33208116 (N.D. Cal. May 26, 2000), *aff'd*, 32 F. App'x 905
(9th Cir. 2002)...........................................................................................................................6

*In re LendingClub Sec. Litig.*,
254 F. Supp. 3d 1107 (N.D. Cal. 2017) ....................................................................................6

*Matrixx Initiatives, Inc. v. Siracusano*,
563 U.S. 27 (2011)...................................................................................................................14

*McGovney v. Aerohive Networks, Inc.*,
2019 WL 8137143 (N.D. Cal. Aug. 7, 2019) ............................................................................7

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
540 F.3d 1049 (9th Cir. 2008) ..................................................................................................2

*Murphy v. Precision Castparts Corp.*,
2017 WL 3084274 (D. Or. June 27, 2017) ...............................................................................6

*Nguyen v. Endologix, Inc.*,
962 F.3d 405 (9th Cir. 2020) ..................................................................................................14

*In re Nimble Storage, Inc. Sec. Litig.*,
756 F. App'x 779 (9th Cir. 2019) ...........................................................................................10

*Nursing Home Pen. Fund, Local 144 v. Oracle Corp.*,
380 F.3d 1226 (9th Cir. 2004) ................................................................................................11

*Osher v. JNI Corp.*,
308 F. Supp. 2d 1168 (S.D. Cal. 2004), *rev'd in part*, 183 F. App'x 604
(9th Cir. 2006)...........................................................................................................................4

*Paciga v. Invuity Inc.*,
2019 WL 3779694 (N.D. Cal. Aug. 12, 2019) .........................................................................3

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
759 F.3d 1051 (9th Cir. 2014) ............................................................................................6, 11

*Prodanova v. H.C. Wainwright & Co., LLC*,
993 F.3d 1097 (9th Cir. 2021) ................................................................................................11

**Katten**
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

iii

*In re Quality Sys., Inc. Sec. Litig.*,
  865 F.3d 1130 (9th Cir. 2017) ...............................................................................................3, 10

*In re Rackable Sys., Inc. Sec. Litig.*,
  2010 WL 3447857 (N.D. Cal. Aug. 27, 2010) ...............................................................................5

*Ramirez v. Ghilotti Bros. Inc.*,
  941 F. Supp. 2d 1197 (N.D. Cal. 2013) ...............................................................................13

*Rodriguez v. Gigamon Inc.*,
  325 F. Supp. 3d 1041 (N.D. Cal. 2018) ...............................................................................8

*Ronconi v. Larkin*,
  253 F.3d 423 (9th Cir. 2001) ...............................................................................5, 7, 13

*S. Ferry LP, # 2 v. Killinger*,
  542 F.3d 776 (9th Cir. 2008) ...............................................................................11

*Sanders v. Realreal, Inc.*,
  2021 WL 1222625 (N.D. Cal. Mar. 31, 2021)...............................................................................3, 4, 10

*Scheller v. Nutanix, Inc.*,
  450 F. Supp. 3d 1024 (N.D. Cal. 2020) ...............................................................................7

*Schueneman v. Arena Pharm., Inc.*,
  840 F.3d 698 (9th Cir. 2016) ...............................................................................14

*Shenwick v. Twitter, Inc.*,
  282 F. Supp. 3d 1115 (N.D. Cal. 2017) ...............................................................................12

*In re SunPower Corp. Sec. Litig.*,
  2018 WL 4904904 (N.D. Cal. Oct. 9, 2018)...............................................................................14

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
  551 U.S. 308 (2007)...............................................................................13

*In re Versant Object Tech. Corp.*,
  2000 WL 33960105 (N.D. Cal. May 18, 2000) ...............................................................................7

*Waterford Twp. Police v. Mattel, Inc.*,
  321 F. Supp. 3d 1133 (C.D. Cal. 2018), *aff'd*, 794 F. App'x 669 (9th Cir. 2020) ..................12

*Wozniak v. Align Tech., Inc.*,
  850 F. Supp. 2d 1029 (N.D. Cal. 2012) ...............................................................................13

*Yanek v. Staar Surgical Co.*,
  388 F. Supp. 2d 1110 (C.D. Cal. 2005) ...............................................................................8

*Zaghian v. Farrell*,
  675 F. App'x 718 (9th Cir. 2017) ...............................................................................8, 14

iv

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

**Katten**
KattenMuchinRosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

# **INTRODUCTION**[1]

Plaintiff's Opposition is most notable for what it says this lawsuit is *not* about.  This is *not* a missed forecast case, because Plaintiff agrees Anaplan *never* issued Q4 2020 billings guidance.  (*See* Opp'n at 16.)  This is *not* a restatement case, because Plaintiff does not allege any financials were inaccurate.  (*See* Opp'n at 24.)  What is left is a fraud-by-hindsight lawsuit, triggered solely by Anaplan's announcement of Q4 2020 billings growth that fell below analysts' expectations, followed by a drop in the Company's stock price.  Stripped to its core, the Complaint represents, at most, a disjointed patchwork of grievances by former employees about management style at Anaplan.  That does not make for a securities fraud claim.

The Opposition confirms that the CWs—who were not employed during the relevant time period and/or are inadequately described under PSLRA—allege nothing more than watercooler complaints about workplace culture and salesforce challenges (*e.g.*, missed internal quotas) common to all business organizations.  None of this establishes these supposed "problems" had caused Anaplan's Q4 2020 billings growth to slow when the challenged statements were made.  Nor can the CW allegations about Calderoni's and Morton's "micromanagement" style, which are not tethered to any time period or challenged statements, establish they were aware of a billings slowdown.  And the CW allegations certainly provide no compelling story for why Defendants would be motivated to inflate internal "billings" forecasts given that Anaplan did not issue billings guidance.  Because Plaintiff does not come close to satisfying the PSLRA's exacting pleading requirements for falsity and scienter, the Complaint should be dismissed with prejudice.

## I.    THE COMPLAINT DOES NOT PLEAD A FALSE STATEMENT OR OMISSION.

### A.    The Complaint Fails to Establish that Statements Concerning Anaplan's Billings or Overall Business Strength Were False When Made.

As explained in the Motion, the only arguably non-puffery statements in the Complaint related to billings are:  (1) Morton's Q3 2020 earnings call statement, on November 21, 2019, that "we believe billings to track in line with overall revenue growth rates" (¶ 53); and (2) Calderoni's

---

[1] Capitalized terms shall have the same meanings ascribed to them in the Memorandum of Law in Support of Defendants' Motion to Dismiss the Amended Complaint ("Mot.").

comment during the same call that he was "not seeing any changes in the macro environment or within deal cycles" (¶ 58). The Complaint, however, fails to allege any facts demonstrating that the "growth of Anaplan's billings was [] slowing" when these statements were made. (*See* Mot. at I(A); *see, e.g.*, ¶¶ 55, 59.) Nothing in Plaintiff's Opposition attempts to repair this fatal flaw.

Critically, Plaintiff ignores Defendants' argument that, given "a relatively large number of [Anaplan's] transactions occur at the end of the quarter" (*see* Ex. 7 at 39), the Complaint cannot establish Anaplan's Q4 2020 billings growth was slowing when the statements were made just ***three weeks*** into that quarter (¶ 53). (*See* Mot. at 8-9.)[2] Plaintiff does not point to any allegations that Q4 2020 billings growth had slowed by then, and thus—contrary to the rule that "fraud by hindsight is not actionable," *In re Fusion-io, Inc. Sec. Litig.*, 2015 WL 661869, at *18 (N.D. Cal. Feb. 12, 2015)—he continues to improperly base his case on Anaplan's eventual announcement that Q4 2020 billings had slowed (¶ 75).

**B.** **The CW Allegations Do Not Establish Defendants' Statements About Anaplan's Growth Prospects or Its Sales Organization Were False.**

Rather than allege particularized facts establishing that Anaplan's billings had slowed when the challenged statements were made, Plaintiff just recycles the same vague CW allegations describing supposed internal problems, which he props up with a scattershot of arguments unsupported by the law. (*See* Opp'n at 10-15.)[3] All these arguments should be rejected.

**1.** **The CW Allegations Are Inadequately Pled.**

As set forth in the Motion, the CW allegations cannot establish the falsity of any statements because the CWs were either: (i) not employed by Anaplan during the relevant time period (*see*

---

[2] Plaintiff also ignores that Morton's statement that billings "track in line with overall revenue growth rates" (¶ 53), was ultimately an ***accurate*** description of Anaplan's FY 2020 performance. (*See* Mot. at 9-10.) Instead, Plaintiff complains that Defendants rely on Anaplan's Form 10-K for FY 2020 "to dispute . . . that Morton was speaking about quarterly growth." (Opp'n at 14.) Far from it, Defendants rely on Morton's statement itself (*see* Mot. at 9-10 (citing ¶ 53))—as directly quoted in the Complaint—to show that Morton was speaking about "***overall***" growth.

[3] Plaintiff inexplicably suggests that whether a statement is adequately alleged to be false is not properly raised on a motion to dismiss. (*See* Opp'n at 11.) It is well settled that "[t]he PSLRA has exacting requirements for pleading 'falsity.'" *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1070 (9th Cir. 2008) (standard not met by "litany of alleged false statements, unaccompanied by the pleading of specific facts indicating why those statements were false").

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel 310.788.4471 fax

Mot. at 10-11); or (ii) their job responsibilities were not described with sufficient specificity (*see id.* at 11). Plaintiff's arguments to the contrary are unavailing.

*First*, the Opposition does not dispute that *half of the CWs* were not even employed by Anaplan during the relevant time period (CW1, CW2, CW7, CW8, and CW10). Instead, Plaintiff seems to respond that these CW allegations may still be reliable because they "corroborate" credible class period allegations or because they speak to general sales organization practices. (*See* Opp'n at 18-19.)[4] But there are no credible class period allegations to corroborate here. (*See infra*.) Further, these non-contemporaneous CW allegations, to the extent they only address Anaplan's general practices, cannot be relied upon to demonstrate the state of Anaplan's billings or sales when the challenged statements were made. *See City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*, 2019 WL 6877195, at *14 (N.D. Cal. Dec. 17, 2019); *see also, e.g., Brodsky v. Yahoo! Inc.*, 630 F. Supp. 2d 1104, 1115 (N.D. Cal. 2009) ("because CW 3 and CW 5 were not [] employees for most of the Class Period, the Court cannot rely on their statements").

*Second*, the allegations of the remaining CWs, and several others (CW4, CW5, CW6, CW7, CW8, CW9, and CW10), are unreliable because they do not describe the CWs "with a large degree of specificity, including not just the witness' job title or description, but also his or her responsibilities." *Paciga v. Invuity Inc.*, 2019 WL 3779694, at *6 n.1 (N.D. Cal. Aug. 12, 2019); (*see* Mot. at 11.) Plaintiff now asserts that the CWs' responsibilities were sufficiently described because their "role[s] [are] encapsulated within their job title[s]," and they "tell what is essentially the same story." (Opp'n at 18.) But Plaintiff's sole authority purportedly endorsing the mere identification of job titles is a decision that *rejected* numerous CW allegations because the complaint "failed to provide a detailed employment description." *See Sanders v. Realreal, Inc.*, 2021 WL 1222625, at *9 (N.D. Cal. Mar. 31, 2021) (cited Opp'n at 18).[5] And Plaintiff cites no

---

[4] Plaintiff cites *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130 (9th Cir. 2017), in which the Ninth Circuit accepted a pre-class period CW's allegation concerning the company's general sales forecasting process, and *not* the state of company sales during the class period. *Id.* at 1145.

[5] The *Sanders* court found that a few CW allegations were sufficiently pled because their job title (*i.e.*, copywriters) happened to have been their precise job description (*i.e.*, copywriting). 2021 WL 1222625, at *8. At the same time, the court found that identifying a CW as "Vice President of Fulfillment" was insufficient for "fail[ing] to describe with any detail what a fulfillment officer

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

3

authority holding that otherwise insufficient CW allegations become credible simply because they "tell the same story."[6]  The CW allegations are thus inadequately pled.[7]

### 2. The CW Allegations Do Not Establish that Defendants' Statements About Anaplan's Growth Prospects Were False.

Even if the CW allegations were adequately pled (they are not), the alleged problems at Anaplan cannot establish Anaplan's Q4 2020 deal closures had begun to (or would) slow when any of the challenged statements were made.  Nonetheless, Plaintiff argues he has sufficiently alleged a "reasonable inference" Anaplan's billings were slowing by virtue of CW allegations that: (1) "only 10-20% of Anaplan's sales team met their quotas," (2) "sales teams [] had below-quota sales projections," and (3) "deals were closing in later quarters and in lower booking amounts." (Opp'n at 11 (citing ¶¶ 38, 42, 43, 45).)  But none of these alleged issues demonstrate Anaplan's Q4 2020 billings growth had slowed by the Q3 2020 earnings call.

As an initial matter, these CW allegations do not specify *any* time period in which these supposed issues existed (*see* ¶¶ 38, 42, 43, 45), and thus Plaintiff cannot claim these issues affected Q4 2020 performance.  *See Osher v. JNI Corp.*, 308 F. Supp. 2d 1168, 1183-85 (S.D. Cal. 2004) (alleged declining demand could not disprove statement about "continued expansion in revenues" where complaint "fail[ed] to allege the time frame for this decline"), *rev'd in part on other grounds*, 183 F. App'x 604 (9th Cir. 2006); *In re Foundry Networks, Inc. Sec. Litig.*, 2003 WL 22077729, at *5 (N.D. Cal. Aug. 29, 2003) (alleged sales slowdown could not disprove statement

[6] does nor did it describe in any level of specificity."  *Id*. at *8.  Likewise, here, the identified CW job titles—for example, Enterprise Account Executive for CW6 (¶ 38), and Enterprise Business Development Representative for CW9 (¶ 47)—are insufficient.  *See Applestein v. Medivation, Inc.*, 861 F. Supp. 2d 1030, 1037 (N.D. Cal. 2012), *aff'd*, 561 F. App'x 598 (9th Cir. 2014).

[6] The cases Plaintiff cites hold only that consistent CW allegations *may*, if reliable, be sufficient to plead a misstatement; *not* that otherwise insufficient CW allegations become credible because there is some consistency.  *See In re Daou Sys., Inc.*, 411 F.3d 1006, 1015-16 (9th Cir. 2005); *In re Countrywide Fin. Corp. Deriv. Litig.*, 554 F. Supp. 2d 1044, 1059 (C.D. Cal. 2008) (cited Opp'n at 18).  In fact, in *Daou*, certain CW allegations were credible *because* their "job description and responsibilities" were "describe[d] … with a large degree of specificity."  411 F.3d at 1016.

[7] As noted in Defendants' Motion, CW3 does not allege anything about Anaplan's salesforce (*see* ¶ 35), that could conceivably contradict any statements at issue.  (*See* Mot. at n.10.)

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel    310.788.4471 fax

4

about expected revenue because "[n]o facts are alleged indicating [] the time period").[8]

If the CW allegations relate to any time period at all, they would relate to quarters preceding Q4 2020 because those CWs could not have known whether sales teams met their quarterly quotas, or the extent to which deals were "closing in later quarters," until the quarter had ended.[9]  Indeed, as explained in the Motion (in another argument Plaintiff ignores, *see* Mot. at 12), the Complaint itself alleges these organizational issues existed as far back as Q2 and Q3 2020.  During those quarters, Anaplan experienced high billings growth.  (Ex. 14 at 4 (46% quarterly YoY growth); Ex. 6 at 4 (59% quarterly YoY growth).)  Therefore, if these problems in fact existed, they did not prevent great billings growth.  This further undermines any inference these issues had already caused billings growth to slow when the challenged statements were made.  *See Ronconi v. Larkin*, 253 F.3d 423, 434 (9th Cir. 2001) (rejecting claim "serious operational problems" decreased revenue because plaintiff did not "allege specific facts that show how these 'problems' and 'difficulties' translated into decreasing revenues"); *In re Rackable Sys., Inc. Sec. Litig.*, 2010 WL 3447857, at *5 (N.D. Cal. Aug. 27, 2010).

### 3.    Anaplan Had No Duty To Disclose Supposed Internal Problems.

Tacitly acknowledging that the Complaint does not establish that Anaplan's billings had slowed when the challenged statements were made, Plaintiff asserts a bizarre and legally unsupported argument that Defendants' statements were nonetheless false because Defendants were required—but failed—to disclose the CW-alleged "risks to Anaplan's increasing Billings momentum" simply because they allegedly "tout[ed] positive information to the market about Anaplan's [b]illings momentum." (*See* Opp'n at 10-11.)  In support of his argument, Plaintiff cites several decisions that stand for the unremarkable and irrelevant point that companies, by attributing past company success to "specific" proper sources, may be required to also disclose the

---

[8] The only allegation tethered in any way to a time period is CW7's allegation that a single deal did not close during Q4 2020 as scheduled.  (*See* ¶ 45.)  However, as explained in the Motion, that deal could not have caused a billings slowdown because of its value and timing.  (*See* Mot. at n.6.)

[9] Of the four CWs that made these allegations, three of them (CW6, CW7, and CW8) had left Anaplan well before Q4 2020 ended.  (*See* ¶¶ 38-39.)

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

5

improper sources of that success. (Opp'n at 10.)[10] But those decisions are completely inapposite here: Plaintiff does not claim Defendants omitted an improper source of *any* past success, nor does he challenge the veracity of *any* stated reasons for Anaplan's success (or even challenge its financials). Quite the opposite, Plaintiff alleges that the supposedly concealed organizational problems had "*impaired*" Anaplan's success. (*See, e.g.*, ¶ 59.) Thus, Plaintiff's assertion that Defendants were required to disclose "risks" to Anaplan's billings growth—which, in all events, Anaplan *did* do (*see* Mot. at 15)—has no legal support.

The law that actually applies is plainly counter to Plaintiff's argument. It is well established that "general positive statements do not give rise to a duty to disclose the details of internal corporate disputes." *Kane v. Madge Networks N.V.*, 2000 WL 33208116, at *9 (N.D. Cal. May 26, 2000), *aff'd*, 32 F. App'x 905 (9th Cir. 2002). Here, Defendants' statements about Anaplan's "overall" growth rates (¶ 53), and "deal cycles" (¶ 58)—which were general remarks unrelated to salesforce morale or turnover—could not impart on them a duty to disclose any supposed organizational problems. *See, e.g.*, *In re FoxHollow Techs., Inc., Sec. Litig.*, 2008 WL 2220600, at *26 (N.D. Cal. May 27, 2008) (company's statements "praising its workforce and noting the importance of its employees to its performance" did not create duty to disclose management discord); *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1057, 1061 (9th Cir. 2014) (rejecting claim that omission of negative product demand trends "misled investors about the sustainability of … revenue growth"). And they certainly did not create a duty to disclose challenges like late deal closures and missed quotas that are common to all companies. *See Brodsky*, 630 F. Supp. 2d at 1114 (CW allegations of "myriad internal problems" were "not enough to refute specifically general statements that project optimism and [company's] growth"). Indeed, courts within the Ninth Circuit routinely reject claims, like Plaintiff's, that companies are required to disclose their internal challenges when making positive statements about their growth. *See id.*;

---

[10] *See In re Apple Sec. Litig.*, 2020 WL 2857397, at *11 (N.D. Cal. June 2, 2020) (past phone upgrade rate obtained by improper throttling); *In re LendingClub Sec. Litig.*, 254 F. Supp. 3d 1107, 1118 (N.D. Cal. 2017) (past revenue obtained by "self-dealing disguised as real transactions"); *Murphy v. Precision Castparts Corp.*, 2017 WL 3084274, at *9 (D. Or. June 27, 2017) (prior growth achieved by artificial sales tactics); *Cunha v. Hansen Nat. Corp.*, 2012 WL 12886194, at *3 (C.D. Cal. Oct. 22, 2012) (past product demand achieved by improper channel stuffing).

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

6

*Ronconi*, 253 F.3d at 434 ("Problems and difficulties are the daily work of business people. That they exist does not make a lie out of any of the alleged false statements.").

### 4.   The CW Allegations Do Not Establish that Defendants' Statements About Anaplan's Sales Organization and Leadership Were False.

Plaintiff argues that Anaplan's Form 10-Q risk warning that it was "continually hiring significant numbers of sales personnel" (¶ 65)—the only challenged non-puffery statement about Anaplan's sales organization—was false because it implied a "growing" salesforce despite Anaplan's alleged "excessive turnover." (*See* Opp'n at 11-12 (citing, *e.g.*, ¶ 46).)  Even if that statement could be so interpreted (which it cannot), the CWs' allegations about employee turnover cannot demonstrate Anaplan's salesforce was not "growing" in the absence of any allegations quantifying the change in Anaplan's sales headcount.  For example, in *McGovney v. Aerohive Networks, Inc.*, 2019 WL 8137143 (N.D. Cal. Aug. 7, 2019), Judge Koh dismissed plaintiffs' claim that a company misstated it had "increase[d] [its] sales capacity"—based on allegations that sales leadership "left the sales organization understaffed and ill-equipped"—because the plaintiffs did not quantify the company's terminated employees against its new hires sufficient to "allege with particularity salesforce understaffing as opposed to salesforce turnover."  *Id*. at *10-11.  Likewise, here, vague allegations of high turnover—and certainly anecdotes of only "six sales and marketing executives [who] had left Anaplan in the preceding year" (¶ 11)—cannot show that Anaplan's sales force was not expanding.[11]  *See Scheller v. Nutanix, Inc.*, 450 F. Supp. 3d 1024, 1036 (N.D. Cal. 2020) ("a company may experience high turnover while still increasing headcount.").[12]

### C.   The PSLRA Safe Harbor Protects Morton's Statement About Billings.

As explained in the Motion, even if Plaintiff had adequately pled Morton's Q3 2020 earnings call statement that he "believe[d] billings to track in line with overall revenue growth

---

[11] In fact, Plaintiff does not dispute that Anaplan's workforce had expanded by 23% from 2019 to 2020.  (*Compare* Ex. 1 at 14, *with* Ex. 5 at 11.)

[12] Plaintiff also argues that Anaplan's Form 10-Q risk warning that its "ability to increase [its] revenue will depend on the new members of our sales force becoming fully productive" (¶ 65), was false given the alleged high turnover.  (Opp'n at 11-12.)  Any representation of future "productivity" is puffery (*see* Mot. at 17), and in any event, it is not inconsistent with high turnover, as "a company can be losing sales personnel and still have a strong sales organization."  *In re Versant Object Tech. Corp.*, 2000 WL 33960105, at *7 (N.D. Cal. May 18, 2000).

Katten
KattenMuchinRosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel  310.788.4471 fax

7

rates" (*see* ¶ 53) was false when made, Plaintiff's challenge would still fail for the independent reason that the statement is protected by the PSLRA's two-pronged "safe harbor." (*See* Mot. at § I(C) (citing 15 U.S.C. § 78u-5(c)(1); *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1189-90 (9th Cir. 2021))). Plaintiff's arguments to the contrary are unavailing.

*First*, Plaintiff argues that Morton's statement was not forward-looking because he was only offering a "snapshot" of Anaplan's present billings and revenue growth rates. (*See* Opp'n at 16.) But this is undermined by the quoted text of Morton's statement, which was made in the context of providing management's financial expectations for FY 2020. (*See* ¶ 53 ("For the full-year, we expect….").)[13] Plaintiff is also wrong that Morton's statement could not have been forward-looking because Anaplan did not provide billings guidance (*see* Opp'n at 16), as a statement can be forward-looking without providing specific financial guidance. *See, e.g.*, *In re ECOtality, Inc. Sec. Litig.*, 2014 WL 4634280, at *5 (N.D. Cal. Sept. 16, 2014) (statement that company would be in a "position to benefit from future growth" was forward-looking).

*Second*, Plaintiff argues the cautionary language that accompanied Morton's statement (*see* Mot. at 15) was "inadequate" for "lack[ing] specificity and misrepresent[ing] present conditions as mere possibilities." (Opp'n at 16-17.)[14] However, as explained in the Motion, Anaplan's cautionary language warned of the precise risks to its quarterly billings growth that Plaintiff alleges materialized. (*See* Mot. at 15 (citing *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1112 (9th Cir. 2013)).)[15] In fact, Plaintiff conveniently omits that Morton prefaced his statement by warning,

---

[13] If Morton were only offering a "snapshot" of Anaplan's billings growth as Plaintiff suggests, his claims would still fail because he alleges no facts establishing that Q4 2020 billings growth had slowed by the time this snapshot was provided three weeks into the quarter. (*See supra* at § I(A)-(B).)

[14] Plaintiff's cited decisions, in which courts found cautionary language to be inadequate (*see* Opp'n at 17), involved generic risk warnings that were far broader than Anaplan's. *See Yanek v. Staar Surgical Co.*, 388 F. Supp. 2d 1110, 1123 (C.D. Cal. 2005) (warnings of "'acceptance of new products' by consumers and 'general domestic and international economic conditions'"); *Zaghian v. Farrell*, 675 F. App'x 718, 720 (9th Cir. 2017) (warning of "potential failure to 'achieve . . . sales expectations'"); *Rodriguez v. Gigamon Inc.*, 325 F. Supp. 3d 1041, 1054 (N.D. Cal. 2018) (warnings of potential failure to close transactions).

[15] Plaintiff attempts to distinguish *Cutera* by asserting it involved forward-looking statements while this case does not (Opp'n at 17), but that is irrelevant to the adequacy of cautionary language.

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel  310.788.4471 fax

8

**Katten**
KattenMuchinRosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel  310.788.4471 fax

"billings can fluctuate from quarter-to-quarter, impacted by timing of renewals and transactions." (¶ 53.) Moreover, Plaintiff's argument that Anaplan's cautionary language was not meaningful because Defendants knew the supposed risks already materialized (Opp'n at 17), is meritless, as "the state of mind of the individual making the statement is irrelevant" if it is accompanied by meaningful cautionary language. *Cutera*, 610 F.3d at 1112; *see ECOtality*, 2014 WL 4634280, at *8 (rejecting that "cautionary language is not meaningful if it warns of future possibilities that Defendants know are already occurring" because it "inquir[es] into the speaker's state of mind").[16]

*Finally*, contrary to Plaintiff's contention (*see* Opp'n at 16), he does not allege that Morton acted with "actual knowledge"—which is required for forward-looking statements—that his statement was false when made. (*See* Mot. at § II; *infra* at § II.)

### D.    The Remainder of the Challenged Statements Are Non-Actionable Puffery.

In his Opposition, Plaintiff incorrectly argues that the remaining statements were not puffery because Defendants, knowing that "[b]illings growth is a critical metric," nonetheless made statements that were "intended . . . to deny any risks to Anaplan's Billings momentum." (*See* Opp'n at 14-15.) As an initial matter, far from "deny[ing] any risks to Anaplan's Billings momentum" as Plaintiff asserts (*see* Opp'n at 14), the puffery statements identified in Defendants' Motion—which expressed generic optimism about Anaplan's future growth potential (Mot. at 16-17), or its salesforce and leadership (*id.* at 17)—had **nothing** to do with Anaplan's billings growth, and did not even use the word "billings." (*See* ¶¶ 51, 53, 56, 58, 65, 67, 70, 73.) And even if they did relate to billings, Plaintiff's contention that these statements would not be puffery because billings is supposedly "critical" to companies like Anaplan is factually wrong[17] and unsupported by legal authority. *Cf. Berg v. Velocity Fin., Inc.*, 2021 WL 268250, at *4 (C.D. Cal. Jan. 25, 2021) ("statements about a corporation's core business may be nonactionable puffery").

Defendants' statements were nothing more than vague and unverifiable statements that

---

[16] The sole decision Plaintiff cites for this point, *Countrywide*, 588 F. Supp. 2d 1132, was issued prior to *Cutera*, and therefore its footnote suggestion that risk factors are not meaningful where the risk had already transpired has been overruled. *See ECOtality*, 2014 WL 4634280, at *8.

[17] Defendants repeatedly warned investors **against** relying upon billings. (*See* Mot. at SOF § C.)

MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS – NO. 20-CV-05959-RS

courts regularly find non-actionable. (*See* Mot. at I(D).) Plaintiff's cited cases, in contrast, dealt with statements concerning specific and verifiable aspects of companies' finances or operations.[18]

## II.    PLAINTIFF FAILS TO PLEAD A STRONG INFERENCE OF SCIENTER.

The Opposition confirms Plaintiff does not meet the PSLRA's exacting standard for pleading scienter. (*See* Mot. at 17-18.) As explained in the Motion: (i) none of the CW allegations establish Defendants knew or recklessly disregarded that the alleged salesforce issues rendered the challenged statements false when made; (ii) the disfavored core operations doctrine is inapplicable; (iii) the limited stock sales are not suspicious or unusual; and (iv) the facts undermining scienter outweigh any semblance of intentional misconduct. (Mot. at 17-25.) Rather than address these deficiencies head-on, Plaintiff devotes his scienter argument to repeating and stretching the same allegations the Motion already explained were inadequate. This is a separate basis for dismissal.

***First***, Plaintiff repeats his odd theory that Anaplan's alleged use of its own software platform "*itself* provides a strong inference of scienter." (Opp'n at 20-21 (emphasis added).)[19] But Plaintiff cites no case law to support this. The Ninth Circuit recently rejected a similar argument in *In re Nimble Storage, Inc. Sec. Litig.*, 756 F. App'x 779, 781 (9th Cir. 2019), where plaintiff relied on allegations the company "used highly accurate predictive technology," holding there were no allegations the "software did in fact predict a third-quarter miss, or that defendants received a report to that effect." (*See* Mot. at 24 n.19.) Likewise, here, the Complaint has no particularized allegations that Anaplan's software platform predicted a Q4 2020 billings miss or that Calderoni or Morton personally received any such reports. (*See* Mot. at 19-20.)[20]

---

[18] *See, e.g.*, *Quality Sys.*, 865 F.3d at 1144 (statements providing information on "the number and type of prospective sales in the pipeline" and the "proportion of the large and mid-sized" markets); *Sanders*, 2021 WL 1222625, at *10 (statement that company had a "'rigorous' authentication process" not puffery because it represented specific and "verifiable" capabilities); *Bos. Ret. Sys. v. Uber Techs., Inc.*, 2020 WL 4569846, at *7 (N.D. Cal. Aug. 7, 2020) (company's statement that "[i]t's a new day" was not puffery because it represented company was no longer violating laws).

[19] Plaintiff twists a single ambiguous statement at a conference referencing "drinking our own champagne" into an admission that Calderoni and Morton knew in "real-time" that their statements were false when made. (*See* ¶ 83.) However, *none* of the CWs even mention Anaplan's use of its own software, much less Plaintiff's overreaching interpretation. (*See generally* Complaint.)

[20] Plaintiff unabashedly asserts Defendants made "specific admissions that they are involved in

MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS – NO. 20-CV-05959-RS

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel    310.788.4471 fax

**Second**, Plaintiff doubles down on the disfavored core operations doctrine, claiming it would be "absurd" for Calderoni and Morton to be "without knowledge" of the alleged risks to Anaplan's billings momentum (even though, as explained above, there was nothing to "know"). (Opp'n at 21-22; *see supra* at § I(A)-(B).)[21]  Yet, even Plaintiff's cited case acknowledges the core operations doctrine is permitted in only an "exceedingly rare category of cases." *S. Ferry LP, # 2 v. Killinger*, 542 F.3d 776, 785 n.3 (9th Cir. 2008); *see Police Ret. Sys.*, 759 F.3d at 1062 (pleading scienter under core operations "is not easy").  This is not an "exceedingly rare" case.  To plead scienter under that doctrine, "[p]laintiffs face a high burden of proof, as they *must* provide either specific admissions by the executives that they were involved in the details of a company's operations or witness statements that the executives were specifically involved in producing the false reports." *Prodanova v. H.C. Wainwright & Co., LLC*, 993 F.3d 1097, 1111 (9th Cir. 2021) (emphasis added).  The Complaint does not meet either requirement:  the Individuals Defendants made no "specific admissions" (*see supra* at nn.19-20), nor were they involved in producing allegedly false reports.  (*See* Opp'n at 24 (manipulated forecasts are "irrelevant to this case").)[22]

**Third**, the Opposition confirms the CW allegations do not support a strong inference of scienter.  The Ninth Circuit requires that CW allegations "provide specific facts showing a *connection between the false statement and the mindset of the person who made it*." *Prodanova*, 993 F.3d at 1110 (emphasis added).  Rather than identify specific facts connecting the *mindsets* of

---

every detail of the company and that they monitored portions of the company's planning database." (Opp'n at 21 (quoting *Nursing Home Pen. Fund, Local 144 v. Oracle Corp.*, 380 F.3d 1226, 1234 (9th Cir. 2004)).)  However, Defendants made no such "specific admissions."  Unlike *Nursing Home*, where Oracle's CEO admitted he "love[d] getting involved in every detail of the business" and "all three top executives said that they monitored portions of Oracle's global database," 380 F.3d at 1234, Defendants never admit they monitored the granularity of Anaplan's billings.

[21] Plaintiff claims Defendants admitted certain billings components are "key metrics" to invoke core operations.  (Opp'n at 21.)  But Plaintiff cites paragraphs (¶¶ 4, 33-35, 53, 82), which only allege that Anaplan stated revenue and deferred revenue, among others, are "key metrics."  (¶ 33.)

[22] *Evanston Police Pen. Fund v. McKesson Corp.*, 411 F. Supp. 3d 580 (N.D. Cal. 2019) (cited Opp'n at 22) is distinguishable.  There, the individual defendants affirmatively "touted intimate knowledge of … generic drug pricing, and challenges that might impede supply," but "falsely attribute[d] generic drug price increases to non-existent supply disruptions."  *Id.* at 602.  Here, there are no allegations Calderoni or Morton affirmatively "touted" any "intimate knowledge."

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel  310.788.4471 fax

11

Calderoni and Morton *to each of the challenged statements when made*, Plaintiff simply parrots back the same allegations about Anaplan's so-called "big morale problem," vague anecdotes of "combative meetings," and generic allegations of micromanagement—without temporally connecting these allegations to any statements. (*See* Opp'n at 22-23 (acknowledging CWs are from "before the Class Period")). This is insufficient. (Mot. at 18-20.) *See, e.g.*, *Fusion-io*, 2015 WL 661869, at *20 (rejecting CW claiming "everyone … was aware of competitive pressure"); *Brodsky*, 592 F. Supp. 2d at 1201 (rejecting CW account because of "temporal mismatch").[23]

*Fourth*, Plaintiff improperly relies on analyst *speculation* about Anderson's departure as "evidence" of scienter. (Opp'n at 23.) But none of the analysts cite any sources (anonymous or otherwise) to support their speculation. (*See* ¶ 77; Mot. at 24.) Nor do any of the CWs allege Anderson departed for any other reason than to spend time with family. (*See, e.g.*, ¶¶ 75-77.) Plaintiff also invokes the departures of CW1 and Melchiorre months *before* the Class Period (¶¶ 34, 47), but, as with Anderson, the Complaint does not link their departures to any underlying fraud, much less Defendants' scienter. *See Gregory v. ProNAi Therap. Inc.*, 297 F. Supp. 3d 372, 415 (S.D.N.Y. 2018), *aff'd*, 757 F. App'x 35 (2d Cir. 2018) (plaintiff must "plead facts non-speculatively linking the resignations of corporate personnel to the company's alleged fraud").[24]

*Fifth*, the Opposition completely ignores most of the inferences demonstrating the limited stock sales were not unusual or suspicious. (Mot. at 20-22; Opp'n at 23-24.) Crucially, Plaintiff does not dispute the Individual Defendants sold *less than 10%* of their overall holdings during the

---

[23] Plaintiff concedes that only three of the CWs had direct contact with Calderoni or Morton (at any point in time), but nonetheless argues this alone is "sufficient." (*See* Opp'n at 22.) But CW1 and CW2 left Anaplan months before the start of the Class Period (¶ 34), and thus "could not have personal knowledge . . . at the time Defendants' allegedly false statements were made." *Waterford Twp. Police v. Mattel, Inc.*, 321 F. Supp. 3d 1133, 1154 (C.D. Cal. 2018), *aff'd*, 794 F. App'x 669 (9th Cir. 2020) (rejecting CW who left before the class period, "[d]espite [the CW's] access to pertinent information and his direct communication with Defendant"). And CW4 merely observed Calderoni was "abrasive" and "fostered a culture that was too tough." *See* ¶¶ 36, 37, 47. While long on personal insults, CW4 alleges nothing about the Individual Defendants' mindsets, let alone particularized facts establishing they knew any statements were false. (*See* Mot. at 18-20.)

[24] In *Shenwick v. Twitter, Inc.*, 282 F. Supp. 3d 1115, 1148 (N.D. Cal. 2017), "*[m]ultiple CWs* stated that, internally, Twitter's employees understood" the executives "had been pushed out of the company due to a lack in user growth." *Id.* (emphasis added).

MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS – NO. 20-CV-05959-RS

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

Class Period—far below the percentages required to establish scienter in the Ninth Circuit.  (*See* Mot. at 21 (citing cases).)  Plaintiff also continues to rely on stock sales by non-defendant Ward, ignoring that courts in this Circuit have repeatedly admonished the inclusion of non-defendant stock sales as "irrelevant."  *See Wozniak v. Align Tech., Inc.*, 850 F. Supp. 2d 1029, 1045 (N.D. Cal. 2012); (Mot. at 22 n.17.)  The Opposition also now *abandons* the claim that Morton's single stock sale was unusual or suspicious.  (*See* Mot. at 22; Opp'n at 23-24 (no argument for Morton)); *see Ramirez v. Ghilotti Bros. Inc.*, 941 F. Supp. 2d 1197, 1210 & n.7 (N.D. Cal. 2013) (opposition's failure to address arguments set forth in defendants' motion is an "abandonment of those claims").  And Plaintiff's claim that Calderoni's Rule 10b5-1 trading plan (which Plaintiff does not dispute all his sales were made under) is "a question of fact reserved for the jury" is contrary to the prevailing law in the Ninth Circuit.  (*See* RJN Reply at 1-3 (collecting cases); Mot. at 22.) [25]

***Finally***, as explained in the Motion, the Complaint's allegations—viewed holistically under *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 323-24, 326 (2007)—do not create a "cogent" and "compelling" inference of scienter.  (*See* Mot. at 24-25.)  Plaintiff's primary theory alleged in the Complaint was that Defendants made positive statements about Anaplan's billings and sales, despite knowing billings growth would slow.  (*See, e.g.*, ¶ 83 ("Defendants knew … billings growth was slowing")).  The Motion explains why this theory makes no sense because, among other things, Anaplan never publicly forecasted quarterly billings, and thus had no incentive to inflate internal billings numbers that would never reach the market.  (Mot. at 24-25.)  In his Opposition, Plaintiff disavows this theory, arguing it is "irrelevant" whether Defendants "[knew]

[25] Plaintiff also superficially challenges the timing of the sales.  But a mere allegation that certain insiders sold stock "around the same time" (*see* Opp'n at 23) cannot support a strong inference of scienter.  His allegation that Calderoni sold shares on the same day as an earnings release similarly fails, because "[o]fficers … commonly make stock transactions following the public release of quarterly earnings." *Brodsky*, 630 F. Supp. 2d at 1118-19.  Plaintiff's citations to *In re Galena Biopharma, Inc. Sec. Litig.*, 117 F. Supp. 3d 1145 (D. Or. 2015) and *Ronconi*, 253 F.3d 423 (cited Opp'n at 23-24) severely undercut his own arguments.  In *Galena*, *seven* company insiders sold "significant percentages" of stock "within the span of 18 trading days."  117 F. Supp. 3d at 1161 n.13, 1204.  In contrast, Calderoni and Morton sold less than 10% of their holdings during the Class Period.  (*See* Mot. at 21-22.)  And in *Ronconi*, the Ninth Circuit *affirmed* dismissal, holding "[o]ne insider's well timed sales do not support the 'strong inference' … where the rest of the equally knowledgeable insiders act in a way inconsistent with the inference."  253 F.3d at 436.

Katten

KattenMuchinRosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel    310.788.4471 fax

13

billings growth would slip" or "that internal forecasts were manipulated." (Opp'n at 24.)

Instead, Plaintiff now claims Defendants "intended to hide" alleged internal sales problems they knew were "risks to Anaplan's billings momentum" (*regardless of whether* Defendants "[knew] billings growth would slip"). (*Id*. at 24-25.) But analyzed holistically, Plaintiff's theory assumes Defendants knew billings were slowing when the challenged statements were made (or else why would they intentionally "hide" these purported problems from investors?). *See Nguyen v. Endologix, Inc.*, 962 F.3d 405, 415 (9th Cir. 2020) (rejecting theory defendants concealed problems until "inevitable fallout").[26] Plaintiff offers no compelling theory that outweighs the straightforward inference that "management believed in its ability to close existing deals." *In re SunPower Corp. Sec. Litig*., 2018 WL 4904904, at *5 (N.D. Cal. Oct. 9, 2018) (Seeborg, J.).

As this Court reasoned in *SunPower*: "Plaintiffs are averring defendants made overly optimistic estimates of [the Company's] near-term sales and revenue when they had information to the contrary. Yet being aware of some signs there *might* be a slowdown in business is not an admission that [the Company] or its control-persons intentionally or knowingly made false statements." *Id.* (emphasis added). The Court should not deviate from this reasoning here.

## III.    PLAINTIFF'S SECTION 20(A) CLAIM FAILS.

Because Plaintiff still fails to establish primary Section 10(b) violation, the Section 20(a) claim should also be dismissed. (*See* Mot. at § III.)

### CONCLUSION

For all the foregoing reasons and those set forth in the Motion, Defendants respectfully request that the Court dismiss the Complaint with prejudice.

---

[26] This case bears no resemblance to *In re Apple Inc. Sec. Litig*., 2020 WL 6482014 (N.D. Cal. Nov. 4, 2020), where only "four days after" making positive statements about iPhone sales in China, Apple told manufacturers to halt iPhone production plans. *Id.* at *11. Apple later *lowered* its earnings guidance by *$9 billion*, and Apple's CEO admitted he "knew it all along" that sales in China began slowing a month before the positive statements were made. *Id.* at *10-11. In contrast, Anaplan *exceeded* its revenue guidance (and never issued billings guidance), and Defendants never admitted they "knew it all along." (*See* Mot. at 5; *supra* at nn.19-20.) Plaintiff's other cases are also distinguishable. *See Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 49 (2011) (company falsely claimed studies were performed); *Schueneman v. Arena Pharm., Inc*., 840 F.3d 698, 708 (9th Cir. 2016) (defendants affirmatively claimed "all of the data was running in [their] favor"); *Zaghian*, 675 F. App'x at 721 (9th Cir. 2017) (brief scienter discussion with no factual analysis).

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel  310.788.4471 fax

14

Dated:  June 21, 2021

KATTEN MUCHIN ROSENMAN LLP

 /s/ *Bruce G. Vanyo*

*Attorneys for Defendants Anaplan Inc.,*
*Frank Calderoni, and David H. Morton*

**Katten**
KattenMuchinRosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

15